Douglas E. McKinley, Jr.
Law Office of Douglas E. McKinley, Jr.
8350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809

Attorney for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON, RICHLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>                         **Plaintiffs,**<br><br>   v.<br><br>**ANGELICA VIVIANA SANCHEZ**<br><br>                         **Defendants,** | Case No.: 4:20-CR-6002-SAB<br><br>**MOTION FOR RELEASE FROM DETENTION**<br><br>**Richland - With Oral Argument April 14, 2020, At 3:30** |

        The defendant, Angelica Viviana Sanchez, respectfully moves this Court

for an order releasing her from custody on strict conditions, pending her trial,

currently scheduled for July 13, 2020.  On January 7, 2020, the government

-1 MOTION FOR RELEASE FROM DETENTION

Law Office of Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

secured an indictment, which charged Ms. Sanchez in three counts under 18 U.S.C. § 2, 21 U.S.C. § 841, and 21 U.S.C. § 846. Ms. Sanchez was arrested by agents on February 19, 2020. She was fully compliant with the officers during that arrest. A bail hearing was conducted on February 24, 2020, at which time the Court found that Ms. Sanchez had not rebutted the presumption of detention, and ordered her detained pending trial.

Since that time, three developments warrant revisiting that finding, and ordering Ms. Sanchez released on strict conditions. First, the United States Department has changed its guidance to the US Attorney's offices with respect to pre-trial detention. Second, the United States government has closed the US Mexico border to all non-essential travel. Third, because of the COVID-19 pandemic and the unique and heightened risks that the outbreak poses to those in custody like Ms. Sanchez, release is now firmly in the public interest and would mitigate the risk of further transmission.

Ms. Sanchez proposes she be released to live with her father and mother with whom she has a close relationship in their house in Outlook, Washington. Defense counsel will make the relevant details known to the Pre-Trial Services office in advance of the hearing. Ms. Sanchez proposes to reside with her parents

-2 MOTION FOR RELEASE FROM DETENTION

Law Office of Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
(509) 392-8083 fax
doug@mckinleylaw.com

and her young child, in a home that is free of firearms, and where neither adult is believed to have a criminal record.

## **Facts and Procedural Background**

On January 7, 2020 the government secured an indictment which charged Ms. Sanchez in three counts: first with conspiring with Jose M. Lopez-Orduno and others to distribute and possess with intent to distribute at least 50 grams of actual methamphetamine (21 U.S.C. § 846); possessing with intent to distribute at least 50 grams of actual methamphetamine (21 U.S.C. § 841) and with possessing with intent to distribute an unspecified quantity of fentanyl (21 U.S.C. § 841).  The government also charged  Mr. Lopez-Orduno with possessing with intent to distribute at least 5 grams of actual methamphetamine (21 U.S.C. § 841) and possessing stolen firearms in violation of 18 U.S.C. § 922(j).

The counts against Ms. Sanchez were based on a search of a shared motel room in Quincy, Washington on December 18, the day following Mr. Lopez-Orduno's arrest. The government obtained a superseding indictment in March that similarly alleges the same five counts, but appears to add two additional co-conspirators. Ms. Sanchez would not know, however, because within the superseding indictment the government has redacted the names of the co-

-3 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

1

2

defendants. At the least, Ms. Sanchez is entitled to know with whom she is alleged to have conspired.

Prior to Ms. Sanchez's arrest on February 19, 2020, Mr. Lopez-Orduno had moved to continue the trial to July 2020, which was granted.  After her arrest the government filed a "notice of joinder" with Ms. Sanchez, which the court subsequently treated as a motion. Over Ms. Sanchez's objection, Judge Bastian ordered a joint trial as to both co-defendants, and scheduled it for July 2020, which remains pending. To Ms. Sanchez's knowledge, the unnamed co-conspirators have not been arrested or yet joined for trial with her and Mr. Lopez-Orduno.  Ms. Sanchez's first bail hearing was conducted on February 24, 2020.  Defense counsel did not present any argument related to the COVID-19 Coronavirus.  At that time, the outbreak of the Coronavirus in the United States was not considered particularly dangerous by the United States government, as it was limited to 14 cases.[1] Indeed, three days later, on February 27, 2020 when total US cases had grown by one to 15, President Trump remarked in a press conference that the virus was not a serious concern, stating: "And again, when you have 15 people, and the 15 within a couple of days is going to be down to close to zero, that's a pretty good

_____

1  https://www.cnn.com/asia/live-news/coronavirus-outbreak-02-24-20-hnk-intl/index.html

-4 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

job we've done."[2] Thus, the issues raised in this motion are new and were not previously considered as part of the Court's decision whether or not to release Ms. Sanchez.

Ms. Sanchez is 24 and a Mexican citizen, but has lived continuously in the United States since age 10.  The entire time Ms. Sanchez has been in the United States she has lived in the Outlook/Sunnyside area, except for three years when she lived in Portland, Oregon.  The probation officer confirmed in the pretrial services report that all of Ms. Sanchez close relatives live in the United States, and all but one in the  Outlook/Sunnyside area.  Specifically, her parents Isabel Ramos and Rafael Sanchez, who live in Outlook, Washington and her five siblings: Isaias Sanchez who resides with her parents; Isabel Ramos and Karen Sanchez who live in Sunnyside, Washington; Sarai Sanchez who resides in Wapato, Washington; and Maribel Sanchez lives in New Jersey.  Ms. Sanchez' 5 year old daughter, who is a US citizen, also lives with Ms. Sanchez' parents in Outlook.

Ms. Sanchez therefore has extensive ties to the community, as her entire immediate family has lived continuously in the Outlook/Sunnyside area for

---

2  https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-conference/

-5 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

seventeen years, she has essentially no ties to Mexico, and she has a five year old daughter who is a US citizen and will be remaining with Ms. Sanchez' parents. Ms. Sanchez criminal record consists of the charges before this court, and an additional unresolved charge in Pasco municipal court for No Valid Operator's License With Valid Identification and a separate unresolved charge in Benton County District Court for driving on a suspended license in the third degree.  None of these charges, including the charges before this court, include any allegations of violence or threats of violence.

In this extraordinary time, courts should look to release (and have been releasing, in fact) pre-trial detainees who (1) are not charged with a violent offense, (2) do not have a history of violence, (3) do not have a history of failing to appear at court proceedings, (4) do not have an extensive criminal history, and who (5) have some ties to the local community or legal status in the United States. Ms. Sanchez meets all of these criteria. If she was not an ideal candidate for release previously, the changed circumstances warrant a different outcome now.

We acknowledge that the new developments do not affect or counter all of the concerns the Court raised in originally ordering Ms. Sanchez detained. However, difficult times call for difficult decisions, and even if release on

-6 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

conditions is disfavored or problematic, the alternative may well be worse both for

Ms. Sanchez and others. *See United States v. Davis*, 2020 U.S. Dist. LEXIS 55310,

at *19 (D. Md. Mar. 30, 2020) (granting release on conditions after noting that

"these are not ordinary times. The current public health crisis has upended the

world as we know it").

<u>Legal Standards</u>

Shortly after the passage and implementation of the Bail Reform Act, the

Ninth Circuit declared that "[o]nly in rare circumstances should release be denied."

*See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). That

pronouncement was in keeping with what the Supreme Court affirmed two years

later in the seminal Bail Reform case, which was that pre-trial detention still

remained disfavored. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In

our society liberty is the norm, and detention prior to trial or without trial is the

carefully limited exception."). Close cases should result in release, as any

"[d]oubts regarding the propriety of release should be resolved in favor of the

defendant." *Id.; see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198

-7 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

(9th Cir. 2019); *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (echoing same legal standards); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (re-affirming same guiding principles well after Bail Reform Act became anchored in federal consciousness and practice). The Bail Reform Act "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *Motamedi*, 767F.2d at 1405 (emphasis added). It speaks of reasonable assurances, not guarantees, a standard that would otherwise be impossible to satisfy prospectively. *See United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985).  In spite of the presumption favoring detention – a presumption which arguably was never meant to apply to someone like Ms. Sanchez with the same force as for more violent, prolific and exalted drug and violent racketeering defendants that the Bail Reform Act targets, *see Salerno*, 481 U.S. at 743-45, 750-52; *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) – the Government retains the overall burden of persuasion. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *Gebro*, 948 F.2d at 1121; *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991); *United States v. Ward*, 63 F. Supp. 1203, 1209 (C.D. Cal. 1999). This distinction is often obscured, as the defendant has only the burden

-8 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

of production, to come forward with some evidence that cuts against flight risk or

danger to the community. *See United States v. Hunt*, 240 F. Supp. 2d 128, 131

(D.D.C. 2017) (noting that the defendant need only present "some credible

evidence contrary to the statutory presumption"). That burden is limited and not

terribly heavy. *See Hir*, 517 F.3d at 1086; *see also United States v. Mercedes*, 254

F.3d 433, 436 (2d Cir. 2001) (noting that defendant bears only a "limited burden of

persuasion").  It is not that the Court becomes empowered to ignore or overlook

the presumption of detention entirely. However, it is appropriate to engage in a

case by-case analysis that permits ascribing varying degrees of evidentiary weight

to the presumption depending on the extent to which the defendant and her case

based on the proffered facts matches the "congressional paradigm" of the

defendants and cases that Congress intended to reach. *See United States v. Palmer-*

*Contreras*, 835 F.2d 15, 17-18 (1st Cir. 1987); *see also United States v. Marino*,

731 F. Supp. 2d 326 (S.D.N.Y. 2011) (describing effect of statutory presumption,

even for reputed boss of Gambino organized crime family, as only "modest").  The

paradigm that Congress had in mind is that large scale "drug traffickers often have

the resources and foreign contacts to escape to other countries," and that forfeiture

of a high bond amount may be a "cost of doing business" that renders them

-9 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

"special flight risks." *Palmer-Contreras*, 835 F.2d at 17.  Further, the Bail Reform

Act1 does not authorize pretrial detention based solely on a finding of

dangerousness. *See United States v. Twine*, 344 F.3d 987 (9th Cir. 2003).

Empirically, the presumption of detention is a poor predictor of whether

defendants released on conditions will commit new offenses or violations, or flee

or fail to appear. "High risk presumption cases were found to pose no greater risk

(or in some cases, less risk) than high-risk non-presumption cases of being

rearrested for any offense, being rearrested for a violent offense, failing to appear,

or being revoked for technical violations." Amaryllis Austin, *The Presumption for

Detention Statute's Relationship to Release Rates*, Federal Probation 52, 58 (Sept.

2017). The risk of flight needs to be a "serious" one; it must be real and cannot be

speculative or hypothetical. *See United States v. Madoff*, 586 F. Supp. 2D 240,

247-50 (S.D.N.Y. 2009); *United States v. Gentry*, 455 F. Supp. 2d 1018 (D. Ariz.

2006); *United States v. Giordano*, 370 F. Supp.2d 1256 (S.D. Fla. 2005); *United

States v. Giampa*, 755 F. Supp. 2d 665 (W.D. Pa. 1990).  Finally, the Bail Reform

Act[3], by its express terms, permits a defendant to revisit prior adverse findings:

------

3Calling it the Bail Reform Act is something of a misnomer. A more apt title
would be the Bail Elimination Act. In 1984, prior to its passage, just 2% of federal
defendants were detained pretrial. By 2014, that number rose to 72%, an oddity
where detention is supposed to be the exception to the rule. See Salerno, 481 U.S.

-10 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). It does not define what constitutes a "compelling" reason, although the COVID-19 pandemic would appear to be compelling by almost any measure, and courts have begun relying on this provision on ordering the release of pre-trial detainees. *See, e.g., United States v. Stephens*, 2020 U.S. Dist. LEXIS 47846, at *7-9 (S.D.N.Y. Mar. 19, 2020); *United States v. Michaels*, 2020 U.S. Dist. LEXIS 56239, at *3 (C.D. Cal. Mar. 26, 2020).

<u>The COVID-19 Pandemic Constitutes an Extraordinary Public Health Risk</u>

The Coronavirus threatens the public in a way that an infectious disease has not for a century. Infectious disease specialists described COVID-18 as a "novel zoonotic coronavirus that has been identified as the cause of a viral outbreak that originated in Wuhan, China in December 2019 . . . [which attacks the respiratory system and] makes certain populations of people severely ill."

---

at 755 (noting that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). The numbers speak for themselves, however. See https://www.bjs.gov/content/pub/pdf/prd-bra84.pdf; https://www.bjs.gov/content/pub/pdf/fjs14st.pdf.

-11 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

Declaration of Dr. Jonathan L. Golob, at ¶¶ 1-2, attached as Exhibit A. "The

COVID-19 outbreak in Seattle has resulted in the need for unprecedented public

health measures, including multiple efforts to facilitate and enforce social

distancing." Golob Declaration, at ¶ 12. "The only way to mitigate [and prevent the

rapid spread of] COVID-19 is to use scrupulous hand hygiene and social

distancing." Declaration of Dr. Robert L. Greifinger, at ¶¶ 4, 8, attached as Exhibit

B. The virus outbreak reached pandemic status, after the World Health

Organization labeled it as such on March 11, 2020.[4]

Worldwide to date, there have been over 1.2 million cases and more than

72,000 attributable deaths.[5] The president declared a national emergency on March

13, 2020. Charlie Savage, *Trump Declared an Emergency Over Coronavirus.*

*Here's What It Can Do*, N.Y. TIMES, March 13, 2020. In order to attempt to

minimize transmission of the disease, the White House imposed social distancing

guidelines first on March 16, 2020, and then again on March 29, through the end of

_____

4 https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

5 https://who.sprinklr.com/. The reported numbers are only a snapshot in time, imperfect for multiple reasons, and sadly appear constantly on the increase. Thus, they will be significantly out of date on April 14, the date of the hearing on the motion.

-12 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

April. Michael D. Shear, *Trump Extends Social Distancing Guidelines Through End of April*, N.Y. TIMES, March 29, 2020. Governor Inslee, meanwhile, issued a stay-at-home order on March 23, after local Yakima health issues issued their own stay-at-home order the day before. Jim Brunner & Daniel Beekman, *Washington Governor Issues Two-Week Stay-At-Home Order*, SEATTLE TIMES, March 23, 2020.

The numbers are grim, particularly in the United States, which appears to have the dubious distinction of the highest number of confirmed cases (by a wide margin), and the most deaths except for Italy and Spain. The Centers for Disease Control reports over 330,000 confirmed cases in the United States to date, with 8,910 deaths resulting from the virus.[6]  As of April 7, there were 8,384 confirmed cases in Washington State, with 372 deaths.[7]  Benton County has 172 confirmed COVID-19 cases, with 17 deaths resulting from the virus. Id. The numbers are similar for Yakima County: 346 confirmed cases, with 12 deaths. Id.  These numbers are sure to rise, and of course, they do not account for the large number of

---

6  https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

7  https://www.doh.wa.gov/Emergencies/Coronavirus

-13 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

people who have acquired the Coronavirus either without knowing it or without having been tested for confirmation, as many people appear to be asymptomatic.[8] Meanwhile, the Benton County Jail, where Ms. Sanchez has been housed since February 20 have yet to report any known or confirmed cases. That is likely to change at some point, as discussed below.

The risk for the community at large, significant as it is, is magnified exponentially for those in custodial confinement, especially jails and prisons. Keeping a safe distance from others, and constant hand-washing and other sanitary measures are some of the most effective ways to slow the spread of the virus, but that lifestyle belies the reality of conditions in custody and what is realistic and feasible. Inmates are at an acute risk of transmission. "The coronavirus is spreading quickly in America's jails and prisons, where social distancing is impossible and sanitizer is widely banned, prompting authorities across the country to release thousands of inmates in recent weeks to try to slow the infection, save

---

8    https://www.propublica.org/article/what-we-need-to-understand-about-asymptomaticcarriers-if-were-going-to-beat-coronavirus;

https://www.nytimes.com/2020/03/31/health/coronavirusasymptomatic-transmission.html;

https://www.thedailybeast.com/italys-covid-19-cases-likely-ten-timeshigher-than-official-numbers-says-official.

-14 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

lives and preserve medical resources." Timothy Williams, Benjamin Weiser, William K. Rashbaum, *Prisoners 'Terrified' as Coronavirus Spreads Behind Bars*, N.Y. TIMES, March 30, 2020. The recent increase in positive cases and death has been accompanied by an increase in the number of news and media articles focused on COVID-19 in detention facilities. See, e.g., Daniel A. Gross, *'It Spreads Like Wildfire': The Coronavirus Comes to New York's Prisons*, THE NEW YORKER, Mar. 24, 2020; Reuters, *Spread of Coronavirus Accelerates in U.S. Jails and Prisons*, Mar. 28, 2020. To date, over 250 inmates and staff at BOP facilities have been infected by COVID-19, and that number continues to increase.[9]

According to one noted epidemiologist, it is an "urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible." Declaration of Dr. Chris Beyrer for Persons in Detention and Detention Staff, at ¶ 17, available at http://www.wisconsinappeals.net/wp-content/uploads/2020/03/Beyrer-Declaration-C3.pdf. Dr. Beyrer notes that jails and prisons are at increased risk for transmission of infectious diseases because of the conditions inherent in such environments, including "overcrowding, population density in close confinement, insufficient ventilation, shared toilet, shower, and

---

9  https://www.bop.gov/coronavirus/

-15 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

eating environments and limits on hygiene and personal protective equipment such as masks and gloves in some facilities." *Id.* at ¶¶ 11, 14; Golub Declaration, at 13 (noting it is "reasonable to expect COVID-19 will also readily spread in detention centers, particularly when residents cannot engage in proper hygiene and isolate themselves from infected residents or staff"). Another noted physician (discussing immigration detention facilities, although defense counsel is unaware of any appreciable distinction with penal facilities) frames the problem as such: Immigration detention facilities are enclosed environments, much like the cruise ships that were the site of the largest concentrated outbreaks of COVID-19.

> Immigration detention facilities have even greater risk of infectious spread because of conditions of crowding, the proportion of vulnerable people detained, and often scant medical care resources. People live in close quarters and cannot achieve the "social distancing" needed to effectively prevent the spread of COVID-19. Toilets, sinks, and showers are shared, without disinfection between use. Food preparation and food service is communal, with little opportunity for surface disinfection. Staff arrive and leave on a shift basis; there is little to no ability to adequately screen staff for new, asymptomatic infection.

Exhibit B, at ¶ 11. Dr. Beyrer (author of the non-attached declaration) therefore recommends, as a matter of public health, that [r]eleasing as many inmates as possible is important to protect the health of inmates, the health of correctional

-16 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

facility staff, the health of health care workers at jails and other detention facilities,

and the health of the community as a whole." Beyrer Declaration, at ¶ 19.

Policy makers have begun modifying operations. For example, Attorney

General Barr has advocated the increased and urgent use of home confinement as

an alternative to prison, in two directives to BOP officials within the past 10 days.[10]

More recently, on April 6, Attorney General Barr directed a memo to all Heads of

Department Components and all US Attorneys titled "Litigating Pre-Trial

Detention Issues During the COVID-19 Pandemic."[11]   Attorney General Barr

specified that US Attorneys:

> ...should now consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic. Even with the extensive precautions we are currently taking, each time a new person is added to a jail, it presents at least some risk to the personnel who operate that facility and to the people incarcerated therein.

Attorney General Barr further set forth that:

> We have an obligation to minimize these risks to the extent possible while remaining faithful to the BRA's text and discharging our overriding obligation to protect the public. That means you should consider not seeking detention to the same degree we would under normal circumstances—specifically, for those defendants who have not committed serious crimes and who present little risk of flight (but no threat to the

10    https://www.justice.gov/file/1266661/download;
      https://www.justice.gov/file/1262731/download

11    https://www.justice.gov/file/1266901/download

-17 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
(509) 392-8083 fax
doug@mckinleylaw.com

public) and who are clearly vulnerable to COVID-19 under CDC Guidelines. In this analysis, the risk of flight and seriousness of the offense must be weighed against the defendant's vulnerability to COVID-19.

Finally, Attorney General Barr further set forth that:

...these same considerations should govern your litigation of motions filed by detained defendants seeking release in light of the pandemic.

These same and similar concerns have begun manifesting themselves in a growing number of district court decisions from federal courts across the country. Whereas it may once have been the case (although we do not concede the proposition in this case) that releasing a particular defendant posed a danger to the community, now, in many cases, because of the risk of transmission, it is the continued detention of many defendants that causes the greater danger and risk to the public good. *See United States v. McLean*, Crim. No. 19-380, slip op. at 4 (D.D.C. Mar. 28, 2020) ("Defendant's continued pretrial detention poses a risk to community safety, which the Court must weigh against the risk posed by her release to home confinement"); *United States v. Harris*, 2020 U.S. Dist. LEXIS 55339, at *2 (D. D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to

-18 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

home confinement on these strict conditions."); *United States v. Ramos*, 2020 U.S. Dist. LEXIS 52586, at *1 (D. Mass. Mar. 26, 2020) (finding that Ramos's "continued detention poses a risk of danger to himself and others"). It is not only the sickest, oldest or most vulnerable who are being released, although many court orders have focused on that population demographic. See, e.g., *United States v. Perez*, 2020 U.S. Dist. LEXIS 47515, at *1 (S.D.N.Y. Mar. 19, 2020) (ordering release of 65 year-old defendant with COPD and "unique confluence of serious health concerns and other risk factors"); *United States v. Garcia*, Case No. 95-cr- (E.D. Wisc. Mar. 27, 2020) (granting application for compassionate release for 81 year old with "severe and critical health conditions"). But courts have also issued release orders even for those who might not otherwise appear to be most vulnerable in custody or those whose circumstances have not changed much, if at all, since the initial bail determination. *See Stephens*, 2020 U.S. Dist. LEXIS 47486, at *10; McLean, Crim. No. 19-380, slip op. at 4 ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed - with one exception. That one exception - COVID-19 - however, not only

-19 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

rebuts the statutory presumption of dangerousness, see 18 U.S.C. SS 3142(e), but tilts the balance in favor of release"); *Davis*, 2020 U.S. Dist. LEXIS 55310, at *16 (ordering release of non-violent drug defendant in "excellent health" because COVID-19 outbreak allowed rebuttal of presumption, consideration of public health emergency's impact on the danger of release, and conclusion that "continued incarceration poses a greater risk to community safety than her release"). Thus, while it might make sense to focus first on the most vulnerable and give them the most in the way of indulgences, the risk is real and immediate for all in custody, no matter the condition of their immune or respiratory systems. And of course, there is a risk that healthy persons at lesser risk are not manifesting symptoms, but can unknowingly transmit COVID-19 to persons at greater risk.[12] "The risk of overburdening the jail's healthcare resources, and the healthcare resources of the surrounding community is real." *Harris*, 2020 U.S. Dist. LEXIS 55339, at *1.  Further, courts have also released persons or reduced sentences for those serving their sentences and who therefore, unlike Ms. Sanchez, have been proven guilty and lost the presumption of innocence. *See United States v. Jepsen*,

---

[12] European Centre for Disease Prevention and Control, Rapid Risk Assessment:Coronavirus Disease 2019 (COVID-19) Pandemic: Increased Transmission in the EU/EEA and the UK Seventh Update (Mar. 25, 2020), https://www.ecdc.europa.eu/en/publications-data/rapid-riskassessment-coronavirus-disease-2019-covid-19-pandemic ("[t]her proportion of pre-symptomatic transmission [has been] estimated to be around 48% to 62%").

-20 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

2020 WL 1640232, at *10 (D. Conn. Apr. 1, 2020); *United States v. Hernandez*, 2020 U.S. Dist. LEXIS 58739, at *7 (S.D.N.Y. Apr. 1, 2020); *United States v. Powell*, Case No. 94-cr-316, Amended Order (D. D.C. Mar. 27, 2020); *United States v. Foster*, Case No. 14-cr-324, Memorandum and Order (M.D. Pa. April 3, 2020); *United States v. Williams*, Case No. 04-cr-95, Order (N.D. Fla. Apr. 1, 2020). The same is the case for those who were to begin serving a sentence, but received deferred surrender dates because of COVID-19 or release pending sentencing. See, e.g., *United States v. Huang*, 2020 U.S. Dist. LEXIS 58355, at *2 (N.D. Cal. Mar. 27, 2020); *United States v. Kennedy*, Case No. 18-cr-20315, Order Temporarily Revoking Detention (E.D. Mich. March 27, 2020). It would be anomalous if the logic of release to protect the community's and jail personnel's health extended to those already convicted but not to those who still enjoy a presumption of innocence. Relief comes in many forms and many postures, but these orders have the common denominator of courts taking steps that at times likely appear distasteful or otherwise unwarranted.  Courts have also recognized that the COVID-19 pandemic affects not just the safety of the community, but the risk of non-appearance as well. Insofar as we are in a new world (even if only

-21 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

temporarily) of closed borders[13], stay-at-home orders, and travel restrictions,

defendants have less incentive to flee (if to do so relies on risks of detection and

putting themselves at risk of transmission in uncertain conditions), and less ability

to do so than previously. And courts have adjusted their approach, including

revisiting previous findings. *See In re Extradition of Alejandro Toledo Manrique*,

2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (granting release in

"extraordinary times" and noting that problem of flight risk is "to a certain extent

been mitigated by the existing pandemic . . .[because] escape is riskier and more

difficult now . . . [and w]hile the risk that Toledo will flee cannot be completely

mitigated, certain release conditions will help"); *Ramos*, 2020 U.S. Dist. LEXIS

52586, at *2 (finding that the "circumstances of the COVID-19 pandemic diminish

the risk that Mr. Ramos will flee pending trial"); *Davis*, 2020 U.S. Dist. LEXIS

55310, at *17 (noting that the "pandemic has significantly curtailed travel

throughout the region, including through Governor Hogan's order today that all

Marylanders stay at home, providing additional assurance that Davis would not

---

13 https://www.federalregister.gov/documents/2020/03/24/2020-06253/notification-of-

temporary-travel-restrictions-applicable-to-land-ports-of-entry-and-ferries-service

-22 MOTION FOR RELEASE FROM DETENTION

Law Office of  Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
 (509) 392-8083 fax
doug@mckinleylaw.com

leave the area even if her had the financial resources to do so"). Through strict conditions of release, the Court can be reasonably assured not only of the community's safety, but of Ms. Sanchez's appearance for court proceedings.

<u>Conclusion</u>

We acknowledge that there is some evidence of guilt and the presence of firearms in the hotel room may be concerning, but this case is not so aggravated by exceptionally violent or dangerous circumstances that should prevent Ms. Sanchez's release amidst a pandemic that is highly dangerous and threatening in its own right. Nor are we proposing any kind of across-the-board rule that non-violent drug defendants must be released in all cases. Only that on balance, the risks of continued detention exceed those of release, and that Ms. Sanchez can be released on strict conditions. We look forward to presenting these arguments at the hearing promptly, and respectfully ask for Ms. Sanchez's release.

Dated: April 7, 2020

By s/ Douglas E. McKinley, Jr.
Douglas E. McKinley, Jr.
WSBA # 20806
Law Office of Douglas E. McKinley, Jr.
8350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
doug@mckinleylaw.com

-23 MOTION FOR RELEASE FROM DETENTION

Law Office of Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
(509) 392-8083 fax
doug@mckinleylaw.com

1

2

Certificate of Service

3

4

I hereby certify that on April 7, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: Stephanie A. Van Marter, Assistant United States Attorney.

5

6

s/ Douglas E. McKinley, Jr.
Douglas E. McKinley, Jr.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-24 MOTION FOR RELEASE FROM DETENTION

Law Office of Douglas E. McKinley, Jr.
18350 Grandridge Blvd., Suite 200
Kennewick, WA 99336
(509) 628-0809
(509) 392-8083 fax
doug@mckinleylaw.com